Good morning. Can you hear me? Yes. Wonderful. May it please the Court, my name is Carmen Smarandoyo and I represent Mr. Bohannon. I would like to reserve three minutes and I'm going to try to keep track of my time. On this appeal, the government is not challenging Mr. Bohannon's reasonable expectation of privacy in his OneDrive account. That position removes any impediment to your Honor's consideration of the challenge to a search warrant for like a probable cause. And I will return to the search warrant challenge later in my argument if I have time. But unfortunately, for your Honors, the search warrant by itself does not dispose of the entire appeal, because NCMEC and law enforcement generally have the one image of child pornography that was initially found by Microsoft and given to them. And for those reasons, I will start there. I will start with Mr. Bohannon's reasonable expectation of privacy in his one file of suspected child pornography. As I said, the government is not contesting the bigger proposition that Mr. Bohannon has a reasonable expectation of privacy in the entire OneDrive account. Nonetheless, it claims that a number of arguments, most of which have been raised for the first time on appeal, destroyed his reasonable expectation of privacy. Well, let's start with this. One of the government's arguments is that there's no reasonable expectation of privacy as to materials that violate the terms of service like child pornography. Why is the government incorrect on that score? So, Your Honor, first of all, I think that the lessons of both Carpenter and Byrd is that the terms of service which govern the private relationship between private parties have nothing to do with the reasonable expectation of privacy. That's what the court said explicitly in Byrd, but it also said that implicitly in Carpenter, where despite the fact that there is a statutory scheme that governs that relationship and also terms of service that mirror that, there was no discussion whatsoever of the terms of service in the Carpenter majority decision. Furthermore, even assuming that the terms of service are relevant, again, the violation has nothing to do with a reasonable expectation of privacy. In Byrd, the driver was unauthorized. He was driving in violation of the terms of service. The Supreme Court said, of course, that he had a reasonable expectation of privacy in the car. In Heckenkamp, which is our discourse decision, the terms of service gave the university the right to access, or its administrators, the right to access computers connected to the network to protect its property. Heckenkamp had access without authorization to the university email system and jeopardized it. Does it matter whether files are uploaded automatically or at the discretion of a user in the calculation of a reasonable expectation of privacy? I don't know, Your Honor. I have not considered that question. And I think that even when upload is automatic, there is still some preliminary decision at some point to opt in into that. But I don't think there is any kind of difference. I don't see why. And maybe Your Honor can help me figure out what you're thinking. For example, let's say I decide to upload my tax records for everyone to see on Facebook. Is that – could it be argued that I have a reasonable expectation of privacy from the government downloading those files in that instance if I'm proactively posting it or giving it to a third party in that case? Well, your hypothetical, Your Honor, envisions posting on Facebook, which is a public forum, which is very different than uploading a file into a password-protected account that is only visible to essentially the account user or the provider. Well, let me give you a different hypothetical. Let's say that I rent you an office space, an office space which has this massive window right in front of a desk. On that desk, inside that office, there is a big gun case with a – it says semi-automatic weapon right on it, semi-automatic. But it's a case. You can't see what's inside the case, but it is a semi-automatic. That's what it says, big case. The window, you can see it. It's right there, right? It's there. It's clearly. So the landlord who says, no semi-automatic weapons in your offices, and it's illegal, you're looking inside that office as the manager is walking by and says, aha, that's a semi-automatic weapon. I'm going to, under my authority, open the door, walk in, grab that semi-automatic, and give it to law enforcement. What's wrong with that? Well, Your Honor, what's wrong with that is that – and correct me if I'm wrong, but you're talking about the private search doctrine here. You are considering that the landlord takes that box without opening it and gives it to law enforcement. That is precisely the scenario that this court addressed in Wilson. In that case, some FedEx – I'm sorry. I'm getting my cases wrong, obviously. That was Jacobson. It was Google. Right. In that case, Google, using its technology, identified those four email attachments as being suspected CP, transmitted them to law enforcement. Law enforcement opened them. This court in Wilson already held that under those circumstances, the private search doctrine does not apply. It does not matter that law enforcement had probable cause to believe, based on Google's proprietary software, that the files contained child pornography. That is not enough. A search warrant is still required. So you're quite right, I mean, as a description of what we said in Wilson. But here, in the actual case here, Microsoft did look at the contents of the file. I disagree, Your Honor. Well, so we have a – we don't have a finding from the district court, but we have a – the cyber tip document that Microsoft submitted said a Microsoft employee viewed the file. And we have the declaration from Mr. Davis that says a Microsoft employee viewed the file. So what is the basis for disagreement? Mr. Davis's declaration says that checking that box or whatever it is on the cyber tip means that somebody at Microsoft viewed the file. He does not have personal knowledge of that. He does not attest that he knows that somebody viewed the file. Right, but he – I mean, we have a business – we have a business record from Microsoft, and we have a person who's familiar with Microsoft's practices and its record-keeping who says that, you know, given the way we do things, this record means that somebody did it. So why isn't – why isn't that enough? Well, the way Microsoft does things, according to Mr. Davis, is actually very different. What Mr. Davis says, and it's in the record at 157, 158, is that upon identification of suspected child pornography, Microsoft takes two steps. One, it suspends the account. Second, it files the cyber tip and provides subscriber information and whatnot. Missing from those two steps is even a claim that a Microsoft employee actually views those files. But we have the claim on the form. I guess to put this – make this a little bit more concrete, you know, suppose we were to say, you know, under Wilson, you know, the applicability of the private search exception depends on whether somebody at Microsoft viewed the file, and we don't have a finding, so therefore we have to remand on that. What's going to happen on remand? I mean, suppose they'll introduce the cyber tip, and suppose they bring in Mr. Davis and he testifies just as he did in the declaration. Unless you get him to admit that he's lying, what are you going to introduce? Well, you know, unless Mr. Davis has personal knowledge of who and when I actually viewed those files, Mr. Davis cannot actually testify to that effect. He can, again, testify according to his declaration, but that is not based on personal knowledge of what happened in this file, in this particular case. And I will note that there is nothing, nothing in the record suggesting that a person viewed that file. There is the document from Microsoft in which they say a person at Microsoft viewed this file. I mean, isn't that admissible? I mean, that's a business record, right? That can be introduced as evidence that, in fact, a person at Microsoft viewed the file, right? And with no evidence at all on the other side, I don't see what else the district court would do. Could the document be construed as if the hashing technology itself was the ESP that viewed the file, or is that clear that it's not the case? I mean, Your Honor, that's what we think happened. We think that Microsoft used an automated system that automatically generated a cyber thief at the time. We don't know that. We never got so far in the district court litigation because of the way the district court proceeded. But Mr. Davis said, like, this signifies that he says someone at Microsoft reviewed the image at issue before it was transmitted to NCMEC. I mean, so it seems to me you would have to say that he's lying about that in order to conclude that someone at Microsoft did not, in fact, view the image before it was transmitted. Mr. Davis does not have – and I'm not alleging that Mr. Davis is lying. I'm alleging that Mr. Davis – maybe that's what it means, generally speaking. I'm saying that in this particular case, actually the government has not proven that. And I want to emphasize it's not our burden to disprove something. It is the government's burden to prove that Microsoft employee viewed the image. And there is no – aside from that checking of the box, which we don't know exactly what it means, we have no assurances in the record that a person viewed that image. And again, I'm referring back to Davis's declaration because when he describes the business practice for his team, he does not say that it is their business practice to view that image. So the record contains plenty of indicia that that checking of the box is not reliable. And I would suggest at the very least we are entitled to explore that only. Can I switch you – I'm sorry to interrupt, but just with limited time. Do we have to reach the question of whether NCMEC is a government entity or agent in order to resolve this case? Well, it depends, Your Honor. If you – you can certainly wait for that question until the district court, for example, makes that factual finding. I think it's up to you how many of these arguments you address and how you resolve the case. I don't know if that answer makes sense. Well, let me ask you this. If we decided that NCMEC or however we want to call this entity is a government entity or agent and this – how would that work in practice and the ramifications of that with the tip line? Does it mean that every time that an ISP sends over a report to NCMEC, they would have to obtain a search warrant before opening that report? If – we're going back to the private search doctrine. If the provider – if an employee, a real person – Let's say no employee has laid eyes on it. It's just hashing technology and it gets sent on to NCMEC. Yes. What then? NCMEC would have to request a search warrant, and I would suggest that would be a pretty easy thing for them to do considering that the hash technology probably would be enough for probable cause. I'm not conceding that issue, but I think there would be a strong argument. Is that consistent with Congress' intent to make this a clearinghouse of information to then distribute it on to law enforcement agencies? It's not acting as a law enforcement agency itself specifically, is it? It is certainly acting as a law – it's not acting as a law enforcement agency just by forwarding those cyber tips and the images. But NCMEC's responsibilities and rights are much broader than that. And NCMEC does participate in training law enforcement, in advising them. So the mere fact that they don't themselves do the law enforcement action at that time I don't think resolves the question. And I would point, Your Honor, the fact that NCMEC does review the images. If they're not acting as a law enforcement agency, I don't really understand why they would do that. If they're just a simple clearinghouse, presumably they would just forward everything without looking into the matter? Well, let me propose something. Let's say the companies themselves don't want to require their own employees to look at potentially disturbing material. And so the hashing technology identifies a potential match, sends it on to NCMEC. Maybe there are certain instances where those matches are not made and NCMEC can say, no, it's not child pornography. And then nothing further happens. Is that a law enforcement function at that point or is it otherwise? It is certainly an investigation into a potential violation of federal criminal law. So it is. I'm already so over my time. We'll give you two minutes for rebuttal. Thank you. Thank you. We'll hear from the government now. Good morning, Your Honor, and may it please the court. Ross Mazur on behalf of the United States. This court should hold that opening the contraband file was not a Fourth Amendment search. Moanen lost any expectation of privacy in that file when Microsoft identified it as child pornography, removed it from the account, and disclosed it. Even if opening the file was a Fourth Amendment search, the court should hold that a warrant wasn't required under the private search exception or alternatively under the third-party consent or single-purpose container exceptions. Well, counsel, what Microsoft did, wasn't it they said that it has the hash values of child porn? It didn't say it was child porn, and there's no evidence in the record that indicates conclusively that it was child porn. The hash values were child porn, correct? Well, the record does indicate that a Microsoft employee looked at the file before sending it to NCMEC, but the record also shows the district court made an express finding that Microsoft's hash-matching technology, its ability to accurately identify known images of child pornography, was undisputed in this case, and the government in its brief has cited similar findings from a number of circuit courts. I was going to just follow up with the point about whether a Microsoft employee actually saw it. The record is pretty spare on that point, it seems to me. I think it's the line that says that, what is it? Someone at the ESR, did reporting ESP view entire contents of uploaded file? Yes. And the declaration itself doesn't indicate a name or have personal knowledge that anyone actually saw it. So why isn't it the more prudent course to send it back to the district court to make a specific finding on this in the first instance? So even if the statement in the cyber tip report itself didn't resolve the question, Microsoft's head of digital safety operations, Sean Davis, this is the guy who's responsible for the team that reviews content detected as child pornography, who would have personal knowledge, submitted a declaration stating under penalty of perjury that when Microsoft checks that box, it means that someone at Microsoft looked at the image before sending it to NCMEC. Now the defense points out that the declaration doesn't say that that was done as a matter of course, but that only supports the government's position. The declaration also doesn't say that sending every file is done as a matter of course. It only says that when Microsoft does check that box, it means that an employee opened the file and looked at it before sending it to NCMEC, and under the express terms of this court's decision in Wilson, that would satisfy the private search exception. But wouldn't it have been helpful if the declaration indicated I know who the employee is, I have personal knowledge that someone in my team actually viewed this file? I mean, we don't know that, and perhaps a limited remand to the district court could ferret out that information that there was a person in fact who actually saw this particular file for this case. I think the only question here is a legal one, whether more specific information, the exact name of the Microsoft employee who looked at the file, is required to make a sufficient finding that someone at Microsoft actually looked at it. Microsoft may have an interest in not disclosing the names of its files, but we have an undisputed record where Microsoft checked the box on the cyber tip form indicating that someone did, and the person who would have personal knowledge of whether that occurred submitted a declaration stating that someone on his team looked at the file, and another declaration from a vice president at NCMEC saying that that's how NCMEC interprets a positive response to that question on the cyber tip form. Now the defense wants to create a material issue of fact to justify an evidentiary hearing by questioning the reliability of those statements, but there's nothing in the record to undermine the reliability. And if that were enough for an evidentiary hearing, the defense could always have one upon request. Can I ask this, Mr. Todd? If we don't agree with you that the record is sufficiently reliable to indicate that an employee did see the file, do we have to reach this question about whether NCMEC is a government entity or agent? So if NCMEC were a private agent, then the government would win on that basis alone. If NCMEC is a government agent, then NCMEC and Sgt. Servat stand in exactly the same position, and the question is whether a warrant was required. The government's view is that, as in this case, this court's recent decision in Rosenau, where the district court also didn't make a finding on whether NCMEC is a government actor, this court should assume without deciding that it is for a couple of reasons. One is that the Ackerman decision on which the defense relies is distinguishable for the reasons in our brief, and more importantly, in response to the Ackerman decision, Congress amended the statutes that govern NCMEC's duties and obligations, and those amendments took effect in October 2018 after the relevant events in this case. So I don't even think the court would be reviewing the current version of the NCMEC statutes, and so the government thinks the best course of action would be to assume without deciding. But turning back from the private search exception to the antecedent question of whether there was an expectation of privacy in the first place, opening the file was not a Fourth Amendment search. There was no expectation of privacy because Bowanen agreed to terms of service that eliminated any privacy interest in contraband like child pornography that Microsoft might identify in his cloud service account. Can I ask you about the relevance of the terms of service here? I guess it's fairly common in leases for the lease agreement to say, you know, residential lease, right, that the landlord can come in for, you know, maintenance of the apartment and to enforce, you know, the terms of the lease, right? It's also fairly common to have a provision that says you can't do anything illegal in your apartment. Does that mean that there's no reasonable expectation of privacy with respect to any illegal activities conducted in an apartment as a general matter? No, I think that hypothetical is distinguishable because the terms of service here went much further than the standard lease agreement that you just described. Now, it's true, as the defense says, that under most circumstances, Microsoft's terms of service protected privacy, and that's why the government isn't arguing that there was no expectation of privacy in the entire contents of the OneDrive account. But the terms of service provided for different eventualities, and once Microsoft identified conduct that violated its terms of service, with child pornography being an obvious example, at that point, the same terms of service to which Boanen agreed and which previously protected his privacy now authorize Microsoft to take a whole new range of actions regarding the offending content, to access it, delete it, remove it from the account, preserve it, and most importantly, to transfer or disclose it to anyone it wanted. It's at that point that when the triggering event occurs, Microsoft identifies in the cloud storage account using technology that's undisputably reliable, a file that's not just evidence of a crime, but whose possession in and of itself constitutes a crime, it's contraband, that Boanen forfeited any expectation of privacy he had, not in the cloud storage account, but in that file. And it's worth noting that in this court's recent decision in the Phillips case, the court described a digital container like a cloud storage account as made up of many smaller containers or files and said that the expectation of privacy of each of those subfiles or subcontainers has to be analyzed separately. And so there's nothing inconsistent about saying Boanen had no expectation of privacy in this particular file once Microsoft, completely in accordance with its terms of service, and there's no challenge that the terms of service violated federal law, identified the file as child pornography, removed it from the account, and disclosed it. So is it your view, I mean, if there's no expectation of privacy, then I suppose if the search had been done by the government in the first instance, so like Microsoft's not doing anything, but the NSA has some way to look through Microsoft's servers and see if there's child pornography in any of the files, it would be okay for them to do that  violates the terms of service, so that the NSA could just look through cloud storage providers? I think that would present different issues because the terms of service provided that Microsoft was authorized to monitor a user's files, and then if Microsoft had a good faith belief that a file contained child pornography, it was authorized to take those range of actions, including disclosing the material to other third parties. Right, but that sounds like a private search, and I thought your position was that because of the terms of service, there's just no expectation of privacy, and if there's no expectation of privacy, then the government can look at it and it doesn't implicate the Fourth Amendment, right? Well, there's no expectation of privacy because under the terms of service, Bawanian forfeited any expectation of privacy under the circumstances of this case in which Microsoft identifies child pornography. Now, if the terms of service don't speak to whether the government can independently search Bawanian's files, and so I think that presents more complicated issues. But I guess what my colleague is getting at is there's an inconsistency with broader Fourth Amendment principles that to an extent Fourth Amendment warrant requirements don't depend on whether someone's committing criminal activity or not because otherwise, you know, if it was that variable and the police could come into my home and find something criminal and say, well, you didn't have a reasonable expectation of privacy as to that, but you did as to other things. And so it seems to be in tension with just the general notion that if the terms of service don't specifically say that Microsoft is going to actively monitor all these files and as to those that it finds might violate terms of service or criminal law, we're going to forward them to law enforcement agencies. There's just not... Someone might have an expectation that their private papers and photos and other things are going to be generally protected otherwise, no? I think I understand the question, but I don't think there's a tension here. The government's argument is not that Bawanian lost an expectation of privacy at the moment he uploaded child pornography. That's not when he lost it. He only lost it pursuant to the terms of service when Microsoft identified it and then took some of those steps that it was authorized to take to remove the content from the account and disclose it, you know, exactly the same way that a hotel guest would lose an expectation of privacy if the hotel found contraband in the hotel room and took affirmative steps to terminate the defendant's right to access the property. I want to respond to one of the defense arguments, which is that private entities' terms of service are actually not relevant with respect to an expectation of privacy against the government, and in particular, the defense relied on the Supreme Court's 2018 decision in Byrd. So Byrd held that someone in otherwise lawful possession and control of a rental car does not lose an expectation of privacy in the car just because that person is not an authorized driver listed on the rental agreement. But Byrd actually strongly supports the government's position for two reasons. First, the court made clear that the expectation of privacy analysis began with the contractual terms, the terms of service. Now, in that case, the court found that the terms of service were really about the allocation of loss and the risk allocation between private parties and had nothing to do with an expectation of privacy, and so they weren't controlling. In this case, the terms of service are expressly about an expectation of privacy because they enumerate what Microsoft is authorized to do upon finding a violation of its code of conduct. So Byrd, along with other cases, including O'Connor v. Ortega, Heckenkamp, and other cases we cite in our brief, foreclose any argument that a private entity's terms of service are not absolutely key to... Council, I thought Heckenkamp said something different, contrary to your point. I thought it said that privacy expectations may be reduced if the user is advised that the information that's transmitted through the network is not confidential and that the system administrator may monitor the communications. But then it held that they were not reduced in Heckenkamp where the policy stated all computers should be private except when essential to protection of integrity of the university. So I guess I think there's a fine point there, right? We have to make a decision whether or not just simply stating those words in this user agreement is sufficient for an individual to give up their rights in that individual file. Well, so Heckenkamp did recognize that the terms of service are a key part of analyzing an expectation of privacy, and so it came down to the language of the terms of service. Now, in this case, we agree with the defense that under most circumstances, Microsoft's terms of service protected the privacy of the files in the OneDrive account. But then the terms of service said, under different circumstances, once there is a triggering event that Microsoft finds files that violate its code of conduct, at that point, there is no more privacy interest. Microsoft can take those files, remove them, disclose them. Now, again, in Byrd, the Supreme Court emphasized that whether there's an expectation of privacy often turns on whether there's a property-based right to exclude others from the property. Now, in Byrd, there was, because even though the driver wasn't authorized, that that driver still had the right to exclude thieves or anyone else to whom the authorized driver hadn't given permission. But in this case, once Microsoft discovered the violation, it had full authority to disclose it to anyone it wanted. And at that point, Bwanin had no property-based right to control or exclude or any other property right with respect to that file. Although Carpenter talks about it, it's not just limited to property-based rights. It's also, you know, the commonly accepted reasonable expectation of privacy and government intrusion into that. I don't know that we have to limit it to property-based rights itself. I mean, I guess for me, what it boils down to is, as I think opposing counsel argued in their briefs, Microsoft could suspend, but I'm not so sure that the ability to suspend extinguishes all privacy interests thereafter. How would you respond to that? I would entirely agree. Now, I don't know, I don't think the record shows in this case whether Microsoft was going to restore access to Bwanin's account or not. But even if it was going to, and that suspension was only temporary, it doesn't matter. The relevant question is whether Microsoft was going to restore access to this file. And the record makes absolutely clear that of course it wasn't, because it was child pornography. And so that wasn't a temporary suspension. That was a permanent removal, which brings this case in line with CUNAG and the other third-party cases where the third party took affirmative steps to permanently lock out the defendant from accessing its services. Thank you, Mr. Mazur. If the court has no further questions, the government would ask you to affirm. Thank you. Thank you. Ms. Morandoglia? I'll try to be very, very brief. We have focused so far only on that one single image and Microsoft's actions. I would like to remind the court that, in addition to that, Mr. Bohemus is maintaining his argument that the search warrant is so facially deficient and so lacking in probable cause, which is independent of the Wilson argument, that at the very least, your honors should reverse and amend as it concerns the search warrant. Can I just make sure I understand your position on the private search question? So, I mean, your view, and tell me if this is right, your view is that the evidence in the record, you don't contest the CyberTIP or the Davis Declaration as far as it goes. You just think that that evidence is insufficient to conclude or to allow a conclusion that somebody at Microsoft, in fact, viewed the file. Is that right? Yeah, I believe it is inconclusive, but more importantly, your honor, I think it is deeply inconsistent with the role of a court of appeals to make those factual findings when the record doesn't allow for one conclusion only. So as long as there is reason to debate what that evidence shows, this court, which is not a court of fact finder, must remain. And to be clear, the evidence is the evidence that we have. You're not suggesting that on remand you have some other witness you would introduce or that you would find somebody else at Microsoft who would contradict Mr. Davis? Your honor, certainly we would explore that further. We'll subpoena Microsoft for the records identifying the precise person who reviewed this image. Well, suppose what you get is Mr. Davis comes in and you ask him, so who is the actual person at Microsoft? And he says, I don't know. We don't keep records of that. I'm just telling you that when we check the box, that means that somebody looked at it. And it's going to be up to the district court to make that credibility determination, especially in light of the declaration that Mr. Davis has submitted so far. And the credibility issue The credibility issue would be we have this uncontested declaration, but maybe he's not telling the truth. The credibility issue is that every single time that that box is checked, it actually means that somebody at Microsoft viewed the images. Right, and that's what he says. And so maybe he's telling the truth or maybe, what would there be to suggest that maybe he's not? Well, your honor, one thing, so first of all, I find it very, very hard to believe that Microsoft would not keep a record of who views essentially contraband. Our subpoena might also reveal that Microsoft used an automated process the way Google uses an automated process in Wilson. I think the idea that just because a box is checked and we don't know how and by whom, that cannot suffice. That simply cannot suffice. Any other questions? All right. Thank you. Thank you very much. Thank both counsel for their helpful arguments this morning. Mr. Mazur, I think I called you Mr. Todd in the argument. I apologize. I'm not sure why. The case is submitted.
judges: MILLER, SANCHEZ, UNKNOWN